UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

---

CONSERVATION LAW FOUNDATION
62 Summer Street
Boston, Massachusetts 02110

NATURAL RESOURCES DEFENSE
COUNCIL, INC.
40 West 20th Street, 11th Floor
New York, New York 10011

R. ZACK KLYVER
1 West Street
Bar Harbor, Maine 04609

CENTER FOR BIOLOGICAL
DIVERSITY
378 N. Main Avenue
Tucson, Arizona 85701

       Plaintiffs,

          v.

DONALD J. TRUMP, in his official
capacity as President of the United
States
1600 Pennsylvania Avenue, NW
Washington, DC 20006

DAVID BERNHARDT, in his official
capacity as Secretary of the Department
of the Interior
1849 C Street, NW
Washington DC 20240

Case No. 1:20-cv-01589-JEB

---

WILBUR ROSS, in his official capacity as
Secretary of the Department of
Commerce
1401 Constitution Avenue, NW
Washington, DC 20230

DR. NEIL JACOBS, in his official
capacity as the person exercising the
authority of the Administrator of the
National Oceanic and Atmospheric
Administration
1401 Constitution Avenue, NW, Room
5128
Washington DC 20230

       Defendants,

JONATHAN WILLIAMS,

       Defendant-Intervenor,

MASSACHUSETTS LOBSTERMEN'S
ASSOCIATION
8 Otis Place
Scituate, Massachusetts 02066

GARDEN STATE SEAFOOD
ASSOCIATION
212 West State Street
Trenton, New Jersey 08608

ATLANTIC OFFSHORE
LOBSTERMEN'S ASSOCIATION
221 Third Street
Newport, Rhode Island 02840

LONG ISLAND COMMERCIAL
FISHING ASSOCIATION
P.O. Box 191
Montauk, New York 11954

       Proposed Intervenors.

## PROPOSED INTERVENORS' MOTION TO INTERVENE

Pursuant to Federal Rule of Civil Procedure 24, Massachusetts Lobstermen's Association; Garden State Seafood Association; Atlantic Offshore Lobstermen's Association; and Long Island Commercial Fishing Association move to intervene as of right, pursuant to Federal Rule of Civil Procedure 24(a). In the alternative, the Proposed Intervenors move for permissive intervention pursuant to Federal Rule of Civil Procedure 24(b).

This motion is based on this motion to intervene; the accompanying memorandum of law; the declarations submitted in support of each proposed intervenor's motion to intervene; the documents previously filed in this action; and any other material the Court may consider in the briefing of this matter. Pursuant to Local Civil Rule 7(c) this motion is accompanied by a [Proposed] Order granting the Proposed Intervenors' Motion to Intervene. Also, contemporaneously with this Motion to Intervene, Proposed Intervenors submit a [Proposed] Motion to Dismiss and supporting memorandum of law, pursuant to Federal Rule of Civil Procedure 24(c).

Prior to filing this Motion to Intervene, counsel for Proposed Intervenors contacted counsel for the existing parties, to request their positions, pursuant to Local Civil Rule 7(m). Counsel for Plaintiffs were contacted on September 10, 2020. Counsel for Plaintiffs stated that Plaintiffs would not be able to provide a position until they reviewed the motion. Counsel for Defendants were also contacted on September 10, 2020, and likewise stated that Defendants would not be able to provide a position until they reviewed the motion. Counsel for Defendant-Intervenor were contacted

between September 10, 2020 and October 2, 2020. Counsel for Defendant-Intervenor

stated that Defendant-Intervenor would not be able to provide a position until they

reviewed the motion.

      DATED: October 5, 2020.

                      Respectfully submitted:

<table>
<tr><td>DAMIEN M. SCHIFF</td><td>s/ Jonathan Wood</td></tr>
<tr><td>(D.D.C. No. CA00045)</td><td>JONATHAN WOOD (D.C. Bar No. 1045015)</td></tr>
<tr><td>Email: dschiff@pacificlegal.org</td><td>Email: jwood@pacificlegal.org</td></tr>
<tr><td>JEFFREY W. McCOY</td><td>*Counsel of Record*</td></tr>
<tr><td>(Cal. Bar No. 317377)</td><td>TODD GAZIANO (Tex. Bar No. 07742200)</td></tr>
<tr><td>Email: jmccoy@pacificlegal.org</td><td>Email: tgaziano@pacificlegal.org</td></tr>
<tr><td>Pacific Legal Foundation</td><td>Pacific Legal Foundation</td></tr>
<tr><td>930 G Street</td><td>3100 Clarendon Blvd., Suite 610</td></tr>
<tr><td>Sacramento, California 95814</td><td>Arlington, Virginia 22201</td></tr>
<tr><td>Telephone: (916) 419-7111</td><td>Telephone: (202) 888-6881</td></tr>
</table>

          *Attorneys for Proposed Intervenors*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

---

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, et al., | Case No. 1:20-cv-01589-JEB |
| Plaintiffs, | |
| v. | |
| DONALD J. TRUMP, in his official capacity as President of the United States, et al., | |
| Defendants, | |
| JONATHAN WILLIAMS, | |
| Defendant-Intervenor, | |
| MASSACHUSETTS LOBSTERMEN'S ASSOCIATION; GARDEN STATE SEAFOOD ASSOCIATION; ATLANTIC OFFSHORE LOBSTERMEN'S ASSOCIATION; and LONG ISLAND COMMERCIAL FISHING ASSOCIATION, INC., | |
| Proposed Intervenors. | |

---

**MEMORANDUM IN SUPPORT OF PROPOSED
INTERVENORS' MOTION TO INTERVENE
(FRCP 24)**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... iii

INTRODUCTION .................................................................................... 1

APPLICANTS ........................................................................................... 3

BACKGROUND ...................................................................................... 7

   I.   Antiquities Act ............................................................................... 7

   II.  Northeast Canyons and Seamounts Marine National Monument ................. 9

   III. The Fishermen's 2017 Lawsuit and Pending Petition for
       Writ of Certiorari ......................................................................... 10

   IV. This Lawsuit ................................................................................ 11

ARGUMENT ......................................................................................... 12

   I.   The Fishermen Have Standing to Intervene as Defendants .......... 12

      A.  Direct Organizational Standing .............................................. 13

          1.  Injury in Fact ................................................................ 13

          2.  Causation and Redressability .................................... 18

      B.  Associational Standing ......................................................... 18

          1.  The Fishermen's members have standing to sue
              in their own right ........................................................ 19

          2.  The interests to be protected are germane to the Fishermen's
              purposes and individual participation is unnecessary .......... 21

   II.  The Fishermen Satisfy Rule 24(a) and Should Be Granted
       Intervention as of Right ............................................................. 22

      A.  The Fishermen's Motion to Intervene Is Timely ...................... 22

      B.  The Fishermen Have Significantly Protectable Interests
         in This Action ........................................................................ 23

      C.  Disposition of This Case in Plaintiffs' Favor Will Impair
         or Impede the Fishermen's Interests ...................................... 24

D.   None of the Existing Parties Adequately Represent the
      Fishermen's Interests.................................................................... 25

III.  In the Alternative, the Fishermen Satisfy the Standard
      for Permissive Intervention................................................................ 30

CONCLUSION............................................................................................. 32

# TABLE OF AUTHORITIES[*]

## Cases

*Am. Ass'n of Retired Persons v. U.S. Equal Emp't Opportunity Comm'n*,
    226 F. Supp. 3d 7 (D.D.C. 2016) ................................................................ 22

*Beckman Indus., Inc. v. Int'l Ins. Co.*,
    966 F.2d 470 (9th Cir. 1992) .................................................................... 31

*\*Crossroads Grassroots Policy Strategies v. Fed. Election Comm'n*,
    788 F.3d 312 (D.C. Cir. 2015) ............................................... 12–13, 18, 21

*Cty. of San Miguel v. MacDonald*, 244 F.R.D. 36 (D.D.C. 2007) ............................. 23

*Dimond v. District of Columbia*,
    792 F.2d 179 (D.C. Cir. 1986) ............................................................. 25–26

*Electronic Privacy Info. Ctr. v. Fed. Aviation Admin.*,
    892 F.3d 1249 (D.C. Cir. 2018) ................................................................ 13

*Foster v. Gueory*,
    655 F.2d 1319 (D.C. Cir. 1981) ................................................................ 25

*\*Fund for Animals, Inc. v. Norton*,
    322 F.3d 728 (D.C. Cir. 2003) ....................................... 22, 24–27, 29

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982) ........................................................................... 13–15

*Humane Soc'y of the U.S. v. Hodel*,
    840 F.2d 45 (D.C. Cir. 1988) .................................................................... 19

*Hunt v. Wash. State Apple Advert. Comm'n*,
    432 U.S. 333 (1977) ................................................................ 18–19, 21

*Jones v. Prince George's Cty.*,
    348 F.3d 1014 (D.C. Cir. 2003) ................................................................ 24

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ................................................................................ 19

*Military Toxics Project v. EPA*,
    146 F.3d 948 (D.C. Cir. 1998) .................................................................. 13

---

[*] Authorities upon which Proposed Intervenors chiefly rely are marked with an *.

iii

*N.C. Fisheries Ass'n, Inc. v. Gutierrez,*
  518 F. Supp. 2d 62 (D.D.C. 2007) .......................................................................... 21

*Nat. Res. Def. Council v. Costle,*
  561 F.2d 904 (D.C. Cir. 1977) ................................................................................ 26

*Nat'l Treasury Emps. Union v. United States,*
  101 F.3d 1423 (D.C. Cir. 1996) ........................................................................ 13, 18

*Nat'l Wildlife Fed'n v. Hodel,*
  839 F.2d 694 (D.C. Cir. 1988) ................................................................................ 21

*Navistar, Inc. v. Jackson,*
  840 F. Supp. 2d 357 (D.D.C. 2012) ........................................................................ 23

*Nuesse v. Camp,*
  385 F.2d 694 (D.C. Cir. 1967) ................................................................................ 24

*People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.,*
  797 F.3d 1087 (D.C. Cir. 2015) .............................................................................. 14

*Spann v. Colonial Vill., Inc.,*
  899 F.2d 24 (D.C. Cir. 1990) .................................................................................. 13

*Town of Chester v. Laroe Estates,*
  137 S. Ct. 1645 (2017) ............................................................................................ 12

*Trbovich v. United Mine Workers of Am.,*
  404 U.S. 528 (1972) ................................................................................................ 25

*U.S. Equal Emp't Opportunity Comm'n v. Nat'l Children's Ctr., Inc.,*
  146 F.3d 1042 (D.C. Cir. 1998) ........................................................................ 30–31

*United States v. Am. Tel. & Tel. Co.,*
  642 F.2d 1285 (D.C. Cir. 1980) ..................................................................... 22–23, 25

*Wilderness Soc'y v. Babbitt,*
  104 F. Supp. 2d 10 (D.D.C. 2000) .......................................................................... 22

## Statutes

54 U.S.C. § 320301 ........................................................................................................ 31

  § 320301(a) ............................................................................................................ 7–8

  § 320301(b) ............................................................................................................... 7

## Rules

Fed. R. Civ. P. 24 ................................................................................................ 1

Fed. R. Civ. P. 24(a) ...................................................................................... 3, 24

Fed. R. Civ. P. 24(a)(2)................................................................................22–24

Fed. R. Civ. P. 24(b) ..................................................................................... 3, 30–32

Fed. R. Civ. P. 24(b)(3)...................................................................................... 32

## Other Authorities

7A Wright, Charles Alan & Miller, Arthur R.,
  Federal Practice and Procedure (1st ed. 1972) ............................................... 25–26

Brief of Defendants-Intervenors-Appellees Natural Resources Defense Council,
  Conservation Law Foundation, Center for Biological Diversity, and R. Zack
  Klyver, *Mass. Lobstermen's Ass'n v. Ross*, No. 18-5353
  (D.C. Cir. May 29, 2019), Doc. No. 1790062........................................... 11

Complaint, *Mass. Lobstermen's Ass'n v. Ross*,
  No. 1:17-cv-00406-JEB (Mar. 7, 2017), ECF No. 1 ................................. 10

Docket, *Mass. Lobstermen's Ass'n v. Ross*, No. 20-97 (U.S.) ..................................... 11

Gaziano, Todd & Yoo, John, *Presidential Authority to Revoke or Reduce
  National Monument Designations*, 35 Yale J. on Reg. 617 (2018) .......................... 8

Lee, Ronald F., *The Antiquities Act, 1900–1906, in*
  The Story of the Antiquities Act (Nat'l Park Serv., 2001), *available at*
  https://www.nps.gov/archeology/pubs/lee/index.htm ................................. 7

Letter from Governor Charlie Baker of Massachusetts to
  President Barack Obama (Nov. 4, 2015), *available at*
  https://www.mass.gov/doc/letter-to-noaa-11415/download...................... 9

Letter from the Chairmen of the Eight Regional Fisheries Management
  Council to President Donald Trump (Mar. 1, 2017),
  *available at* https://www.savingseafood.org/wp-content/uploads/2017/
  03/170301_Regional.Councils.to_.President.Trump_.-re-Natl.Monuments.pdf...... 9

Memorandum Opinion, *Mass. Lobstermen's Ass'n v. Ross*,
  No. 1:17-cv-00406-JEB (Oct. 5, 2018), ECF No. 47................................. 10

Motion to Intervene in Support of Defendants,
   *Mass. Lobstermen's Ass'n v. Ross*,
   No. 1:17-cv-00406-JEB (Mar. 29, 2017), ECF No. 7 ............................................. 10

Opinion, *Mass. Lobstermen's Ass'n v. Ross*,
   No. 18-5353 (D.C. Cir. Dec. 27, 2019), Doc. No. 1821696 ...................................... 10

Order, *Mass. Lobstermen's Ass'n v. Ross*,
   No. 18-5353 (D.C. Cir. Feb. 28, 2020), Doc. No. 1830779 ...................................... 10

Petition for a Writ of Certiorari, *Mass. Lobstermen's Ass'n v. Ross*,
   No. 20-97 (U.S. July 27, 2020) .................................................................. 2, 11, 14, 28

Proclamation No. 1186, 37 Stat. 1733 (Mar. 14, 1912) ................................................. 8

Proclamation No. 1293, 39 Stat. 1726 (May 11, 1915) ................................................. 8

Proclamation No. 1862, 45 Stat. 2984 (Jan. 7, 1929) ................................................... 8

Proclamation No. 2499, 55 Stat. 1660 (July 18, 1941) ................................................. 8

Proclamation No. 2659, 59 Stat. 877 (Aug. 13, 1945) .................................................. 8

Proclamation No. 3307, 73 Stat. c69 (Aug. 7, 1959) .................................................... 8

Proclamation No. 3539, 77 Stat. 1006 (May 27, 1963) ................................................. 8

Proclamation No. 9496 of September 15, 2016,
   81 Fed. Reg. 65,161 (Sept. 21, 2016) ....................................................................... 1, 9

Proclamation No. 10049 of June 5 2020,
   85 Fed. Reg. 35,793 (June 11, 2020) ....................................................................... 1, 11

Response Brief for the Federal Appellees, *Mass. Lobstermen's Ass'n v. Ross*,
   No. 18-5353 (D.C. Cir. May 29, 2019), Doc. No. 1790060 ...................................... 11

**INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 24, Massachusetts Lobstermen's Association, Garden State Seafood Association, Atlantic Offshore Lobstermen's Association, and Long Island Commercial Fishing Association, Inc. (collectively, the Fishermen), move to intervene to protect their significant interests at stake in this litigation.

Plaintiffs, a group of advocacy organizations and an individual with personal and commercial interests related to whale-watching (collectively, "Conservation Law Foundation"), ask this Court to hold unlawful Presidential Proclamation 10049 of June 5, 2020, 85 Fed. Reg. 35,793 (June 11, 2020) (the "2020 Proclamation"), that modified Proclamation 9496 of September 15, 2016, 81 Fed. Reg. 65,161 (Sept. 21, 2016) (the "2016 Proclamation"), and lifted prohibitions on commercial fishing previously in effect in the Northeast Canyons and Seamounts Marine National Monument ("monument"). *See* Complaint, ECF No. 1 at 51. For relief, Conservation Law Foundation asks this Court to restore those commercial fishing prohibitions throughout a 5,000-square-mile area of the Exclusive Economic Zone (EEZ) in the North Atlantic Ocean and order the Secretaries of the Interior and Commerce to enforce those prohibitions. *See id.* This would lock commercial fishermen out of an important fishery they had historically relied upon, severely disrupt commercial fishing activities in surrounding fisheries, and have a substantially negative effect on local economies which rely upon the fishery. *See, e.g.*, Declaration of Beth Casoni ¶ 17;

Declaration of Scot Mackey ¶¶ 11–12; Declaration of David Borden ¶¶ 19–24; Declaration of Bonnie Brady ¶¶ 8, 14–16, 28.

The Fishermen seek to intervene to defend their interests protected by the 2020 Proclamation. Specifically, they are trade associations representing commercial fishermen who have historically fished in the area now designated as a monument, fishermen who operate in neighboring fisheries in the North Atlantic Ocean, and other businesses dependent upon these fisheries. Casoni Decl. ¶¶ 4, 17; Mackey Decl. ¶¶ 4, 11–12; Borden Decl. ¶¶ 4, 21; Brady Decl. ¶¶ 4–6. The 2016 Proclamation prohibited the Fishermen's members from accessing fisheries within the designated area; limited other members from fishing the area after seven years; forced yet others to accommodate greater competition in neighboring fisheries; and reduced the value of their fishing businesses. Casoni Decl. ¶¶ 17–22; Mackey Decl. ¶¶ 4, 11–12; Borden Decl. ¶¶ 19–24; Brady Decl. ¶¶ 8, 13–16. The 2020 Proclamation, by contrast, lifted these fishing prohibitions, thereby allowing the Fishermen's members to resume their work.[2] Should the 2020 Proclamation be declared unlawful, and the 2016 Proclamation's fishing prohibitions be restored, the Fishermen would suffer a significant detriment to their interests.

---

[2] In a related lawsuit discussed further below between the Fishermen, on one side, and the President, other federal officials, and Conservation Law Foundation, on the other, the Fishermen argue that the President's voluntary cessation of the monument's fishing prohibitions does not moot their challenge to the 2016 Proclamation. *See* Petition for a Writ of Certiorari, *Mass. Lobstermen's Ass'n v. Ross*, No. 20-97 (U.S. July 27, 2020). Among other reasons, that challenge is not moot because the fishing prohibitions could be restored by a mere stroke of the presidential pen, demonstrating that the 2020 Proclamation may provide only temporary or illusory relief.

As such the Fishermen have an interest in the 2020 Proclamation being upheld. That interest would be affected by this lawsuit and is not adequately represented by the existing parties. Therefore, the Fishermen are entitled to intervention as of right. Fed. R. Civ. P. 24(a). Alternatively, the Fishermen move for permissive intervention. Fed. R. Civ. P. 24(b).

## APPLICANTS

Intervenor **Massachusetts Lobstermen's Association** was established in 1963 to represent the interests of its 1,800 members and the fishery on which their livelihoods depend, serving as the voice of the Massachusetts lobster industry in the state legislature and regulatory agencies. Casoni Decl. ¶¶ 4, 7. Its mission reflects the interdependence of species conservation and a thriving lobster fishery. The Association actively engages with state and regional government agencies to sustainably manage the ecosystem. For instance, it has helped the industry shift equipment to reduce incidental impacts on whales. *Id.* ¶¶ 5–6. It also worked with fishery management agencies to reduce the number of traps in the region by 30% and, prior to the monument's designation, was working to reduce traps by another 25%. *Id.* ¶ 6. The Association also educates its members on best practices and regulatory issues through a monthly newspaper and social media.

Massachusetts Lobstermen's Association has approximately 250 members who were adversely affected, directly or indirectly, by the 2016 Proclamation and its prohibition on commercial fishing. *Id.* ¶ 17. Although the 2016 proclamation permitted commercial lobster fishing to continue within the monument, it limited this

permission to a period of seven years. *Id.* ¶ 18. As such, the designation immediately depleted the value of some of the lobstermen' s permits—a key part of these small businesses' value—put more pressure on the fisheries left open to fishermen, and impacted coastal businesses that depend on a productive lobster industry. *Id.* ¶ 17.

As a result of these significant harms to its members' interests, Massachusetts Lobstermen's Association, along with the other Fishermen, filed a 2017 lawsuit challenging the 2016 Proclamation and its creation of the monument. *Id.* ¶¶ 23–24. That lawsuit is ongoing and is currently pending before the United States Supreme Court on a petition for writ of certiorari. *Id.* ¶¶ 27–28.

The 2020 Proclamation has, at least for now, alleviated some of the Association's harms. Yet, if Conservation Law Foundation is successful in this lawsuit and the prohibition on commercial fishing is reinstituted, the Association's members will again be subject to the harms imposed by the 2016 Proclamation. *Id.* ¶¶ 34–35.

Intervenor **Garden State Seafood Association** was founded in 1999 to represent the interests of New Jersey fishermen and fishery dependent businesses. Mackey Decl. ¶ 4. It is active on regulatory issues at both the state and federal level and helps to coordinate fishing industry representatives throughout the country. *Id.* Its 200 members include fishing vessel owners and operators throughout the state, from Belford to Cape May. *Id.* ¶ 5. The Association works closely with others to promote the continued sustainability of New Jersey's $100 million commercial fishing industry. *Id.* ¶ 6. It has also played a key role in working with regulators to ensure

that commercial fishing not have adverse environmental consequences. *Id.* ¶¶ 6–7. In particular, it has worked with the Mid-Atlantic Fishery Management Council to develop a rule to protect deep-sea coral in that region, while maintaining a productive fishery. *Id.* ¶ 7. The 2016 Proclamation substantially injured Garden State Seafood Association's members by barring them from the monument area. *Id.* ¶¶ 11–12. If Conservation Law Foundation succeeds in the current litigation, the prohibition will be immediately reinstated, and these injuries immediately reimposed on Garden State Seafood Association's members. *Id.* ¶¶ 24–25. As the result of the aforementioned harms, Garden State Seafood Association joined the 2017 lawsuit challenging the monument. *Id.* ¶ 14.

Intervenor **Atlantic Offshore Lobstermen's Association** was founded in 1973 to sustain and enhance the offshore lobster fishery. Its membership includes the owners of 54% of the permits for offshore lobster and Jonah crab and 69% of the total traps for these species. Borden Decl. ¶¶ 4, 6. It also represents dozens of shoreside businesses related to this industry. *Id.* ¶ 6. The Association educates its members and the public about issues affecting the offshore lobster fishery. It also supports efforts to improve the resource, protect habitat, and other conservation efforts that benefit the lobster industry. *Id.* ¶ 7.

The monument designation and the 2016 Proclamation's prohibition on commercial fishing caused significant harms to Atlantic Offshore Lobstermen's Association's members. *Id.* ¶¶ 19–24. If Conservation Law Foundation is successful in this lawsuit and the prohibition on commercial fishing is reinstated within the

monument, over 10,000 lobster traps used by members of the Atlantic Offshore Lobstermen's Association will be displaced in 2023, when the seven-year period for permitted lobster fishing will elapse. *Id.* ¶ 19. These traps are hauled in weekly, year-round and are thus an important source of employment and income for the industry. *Id.* The Association estimates that in this scenario, the impact on the industry will be $3 million annually, a figure that increases to $10 million when taking into account spillover affects to other businesses dependent on the lobster fishery. *Id.* ¶ 20. The displacement of these traps will also increase conflicts with other gear as lobstermen invade other fisheries. *Id.* ¶ 24. These significant harms to their members' interests prompted Atlantic Offshore Lobstermen's Association to join the 2017 lawsuit challenging the monument. *Id.* ¶ 25.

Intervenor **Long Island Commercial Fishing Association** has represented Long Island's commercial fishermen since 2001. Brady Decl. ¶ 4. Its members include more than 150 businesses, boats, or individual fishermen who fish for a variety of species. *Id.* ¶ 5. The Long Island Commercial Fishing Association's trawl and longline fishermen members were injured by the 2016 Proclamation's prohibition on commercial fishing within the monument, which forbade them from fishing for fluke, whiting, squid, swordfish, and tuna, within the 5,000-square-mile monument. *Id.* ¶¶ 13–14; Declaration of Mark Stephen Phillips ¶¶ 4, 8. These prohibitions resulted in an annual estimated loss to New York fishermen of $1.6 million per year. Brady Decl. ¶ 8. These impacts were further multiplied upon consideration of impacts to shoreside businesses related to the fishermen, like marinas and restaurants. *Id.* As

a result of these significant harms to its members' interests, Long Island Commercial

Fishing Association joined the 2017 lawsuit challenging the monument. *Id.* ¶ 17.

Since President Trump signed the 2020 Proclamation lifting the ban on commercial

fishing within the monument, a number of the Association's members have resumed

fishing in the area, and others intend to resume fishing by the winter. *Id.* ¶ 24;

Phillips Decl. ¶ 11. However, if Conservation Law Foundation succeeds in this

litigation, the 2016 Proclamation's prohibitions will be immediately reinstated, and

the Association's members will again be locked out of the fishery. Brady Decl. ¶ 28.

## BACKGROUND

### I.   Antiquities Act

The Antiquities Act of 1906 authorizes the President to declare, as national

monuments, "historic landmarks, historic and prehistoric structures, and other

objects of historic or scientific interest that are situated on land owned or controlled

by the Federal Government." 54 U.S.C. § 320301(a). The President may reserve public

lands to protect national monuments, but only if the reservation is "confined to the

smallest area compatible with the proper care and management of the objects to be

protected." *Id.* § 320301(b).

As its name suggests, the Antiquities Act was passed primarily to protect

American Indian archeological sites from looting. Ronald F. Lee, *The Antiquities Act,*

*1900–1906*, *in* The Story of the Antiquities Act (Nat'l Park Serv., 2001).[3] The use of

the Antiquities Act has greatly expanded in recent years, with the previous three

---

[3] Electronic version *available at* https://www.nps.gov/archeology/pubs/lee/index.htm.

administrations each designating more, and larger, monuments than their predecessors. *See* Todd Gaziano & John Yoo, *Presidential Authority to Revoke or Reduce National Monument Designations*, 35 Yale J. on Reg. 617, 653–55 (2018). Presidential use of the Antiquities Act has expanded far beyond its namesake antiquities to include designation of vast areas of both land and ocean. Controversially, the Antiquities Act does not require any public process to declare a monument or reserve land for its protection, allowing both by mere proclamation. 54 U.S.C. § 320301(a).

Until very recently, the Antiquities Act has also been used to reduce national monuments without controversy. Prior to this presidential administration seven presidents issued proclamations reducing the size of national monuments. *See, e.g.*, Proclamation No. 3539, 77 Stat. 1006 (May 27, 1963); Proclamation No. 3307, 73 Stat. c69 (Aug. 7, 1959); Proclamation No. 2659, 59 Stat. 877 (Aug. 13, 1945); Proclamation No. 2499, 55 Stat. 1660 (July 18, 1941); Proclamation No. 1862, 45 Stat. 2984 (Jan. 7, 1929); Proclamation No. 1293, 39 Stat. 1726 (May 11, 1915); Proclamation No. 1186, 37 Stat. 1733 (Mar. 14, 1912). The reasoning for these reductions varied by President, ranging from the desire to allow other uses of federal land deemed more beneficial to the public interest, *see* 55 Stat. 1660, to the determination that a reduction was necessary to comply with the statute, because the area was not the smallest area compatible with protecting the monument or because the objects were deemed not to merit protection, *see* 77 Stat. 1006. Some Presidents have even reduced the size of monuments without explanation. 39 Stat. 1726.

**II.     Northeast Canyons and Seamounts Marine National Monument**

On September 15, 2016, President Obama signed Proclamation 9496, which established the 5,000-square-mile Northeast Canyons and Seamounts Marine National Monument off the coast of New England. Proclamation No. 9496 of September 15, 2016, 81 Fed. Reg. 65,161 (Sept. 21, 2016). The Proclamation was signed despite the area being located within the Exclusive Economic Zone (EEZ), and thus beyond the territorial control of the United States federal government, and despite opposition from industry groups, small businesses, the eight regional fishery management councils, and the Governor of Massachusetts. *See* Casoni Decl. ¶ 15; Mackey Decl. ¶ 17; Borden Decl. ¶ 17; Brady Decl. ¶ 12; Letter from the Chairmen of the Eight Regional Fishery Management Councils to President Donald Trump (Mar. 1, 2017) (referencing earlier communications);[4] Letter from Governor Charlie Baker of Massachusetts to President Barack Obama (Nov. 4, 2015).[5]

The proclamation prohibited several activities within the monument, including commercial fishing, with the prohibitions to be enforced by the Secretaries of the Interior and Commerce. 81 Fed. Reg. at 65,164–65. Although the Proclamation permitted continued commercial fishing for red crab, Jonah crab, and lobster, it only permitted access for a period of seven years. *Id*.

The proclamation's prohibition on commercial fishing went into effect on November 14, 2016. Complaint, ECF No. 1 ¶ 88.

---

[4] *Available at* https://www.savingseafood.org/wp-content/uploads/2017/03/170301_ Regional.Councils.to_.President.Trump_.-re-Natl.Monuments.pdf.

[5] *Available at* https://www.mass.gov/doc/letter-to-noaa-11415/download.

### III.   The Fishermen's 2017 Lawsuit and Pending
          Petition for Writ of Certiorari

On March 3, 2017, the Fishermen filed a lawsuit challenging the 2016 Proclamation. *See* Complaint, *Mass. Lobstermen's Ass'n v. Ross*, No. 1:17-cv-00406-JEB (Mar. 7, 2017), ECF No. 1 at 1. That lawsuit claimed that the ocean beyond the territorial sea is not "land owned or controlled" by the federal government and, is therefore, not subject to the Antiquities Act. *Id.* at 16. It also claimed that the 5,000-square-mile area within the monument is not the "smallest area compatible" with the protection of identified objects covered by the Antiquities Act. *Id.*

Each of the Federal Defendants in this case (or a predecessor) were named as defendants in the 2017 challenge. *Id.* at 6–7. And Conservation Law Foundation, Natural Resources Defense Council, Center for Biological Diversity, and R. Zack Klyver—Plaintiffs here—intervened as defendants. *See* Motion to Intervene in Support of Defendants, *Mass. Lobstermen's Ass'n v. Ross*, No. 1:17-cv-00406-JEB (Mar. 29, 2017), ECF No. 7.

On October 5, 2018, this Court dismissed the Fishermen's challenge. Memorandum Opinion, *Mass. Lobstermen's Ass'n v. Ross*, No. 1:17-cv-00406-JEB (Oct. 5, 2018), ECF No. 47. The D.C. Circuit later affirmed that decision, with a minor alteration. Opinion, *Mass. Lobstermen's Ass'n v. Ross*, No. 18-5353 (D.C. Cir. Dec. 27, 2019), Doc. No. 1821696. And earlier this year the D.C. Circuit denied *en banc* review. Order, *Mass. Lobstermen's Ass'n v. Ross*, No. 18-5353 (D.C. Cir. Feb. 28, 2020), Doc. No. 1830779.

On July 27, 2020, the Fishermen filed a petition for writ of certiorari, asking the Supreme Court to review the dismissal of its challenge to the 2016 Proclamation. Petition for a Writ of Certiorari, *Mass. Lobstermen's Ass'n v. Ross*, No. 20-97. That petition remains pending, with the Federal Defendants and Intervenors having obtained two 30-day extensions to file their response. *See* Docket, *Mass. Lobstermen's Ass'n v. Ross*, No. 20-97 (U.S.).

Throughout the course of that litigation, the Federal Defendants and the Intervenors have maintained that the 2016 Proclamation's designation of 5,000 acres of the EEZ as a national monument was a lawful exercise of presidential authority under the Antiquities Act. *See* Response Brief for the Federal Appellees, *Mass. Lobstermen's Ass'n v. Ross*, No. 18-5353 (D.C. Cir. May 29, 2019), Doc. No. 1790060; Brief of Defendants-Intervenors-Appellees Natural Resources Defense Council, Conservation Law Foundation, Center for Biological Diversity, and R. Zack Klyver, *Mass. Lobstermen's Ass'n v. Ross*, No. 18-5353 (D.C. Cir. May 29, 2019), Doc. No. 1790062.

## IV.    **This Lawsuit**

On June 5, 2020, while the Fishermen were preparing their petition for writ of certiorari, President Trump issued Proclamation 10049, which modified the 2016 Proclamation by lifting the prohibition on commercial fishing within the monument. 2020 Proclamation.

Two weeks later, Conservation Law Foundation filed this action challenging the 2020 Proclamation. *See* Complaint, ECF No. 1. Conservation Law Foundation

alleges that the 2020 Proclamation violates the Antiquities Act and the Constitution's separation of powers, and that actions to be taken by the Secretaries of Interior and Commerce in response to the Proclamation violate the Administrative Procedure Act. *See id.* ¶¶ 174–191. Conservation Law Foundation asks the Court to, among other things: declare that the 2020 Proclamation is unlawful and enjoin the Secretaries of the Interior and Commerce from carrying out the 2020 Proclamation. *See id.* at 51.

## ARGUMENT

## I.   The Fishermen Have Standing to Intervene as Defendants

The D.C. Circuit has held that intervenors, including intervenor-defendants, must prove standing, in order to intervene. *Crossroads Grassroots Policy Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 316 (D.C. Cir. 2015).[6] The Fishermen have standing to intervene.

"The standing inquiry for an intervening-defendant is the same as for a plaintiff: the intervenor must show injury in fact, causation, and redressability." *Crossroads Grassroots Policy Strategies*, 788 F.3d at 316. The D.C. Circuit has "generally found a sufficient injury in fact where a party benefits from agency action, the action is then challenged in court, and an unfavorable decision would remove the

---

[6] Although D.C. Circuit precedent is to the contrary, *Crossroads Grassroots Policy Strategies*, 788 F.3d at 316, standing should only be required when an intervenor seeks additional relief beyond that sought by the existing parties. *See Town of Chester v. Laroe Estates*, 137 S. Ct. 1645, 1651 (2017). Under this standard, the Fishermen's right to intervene is even more easily established, because they seek the same relief as the Federal Defendants (the denial of the relief requested by Conservation Law Foundation). In any event, the Fishermen satisfy the standing requirements and have a right to intervene under either standard.

party's benefit." *Id.* at 317; *see also Military Toxics Project v. EPA*, 146 F.3d 948, 954 (D.C. Cir. 1998). That is the case here, as the Fishermen and their members benefit from the challenged 2020 Proclamation and would be injured if this Court grants Plaintiffs' requested relief and restores the commercial fishing prohibition.

An organization can assert standing on its own behalf, on behalf of its members, or both. *Electronic Privacy Info. Ctr. v. Fed. Aviation Admin.*, 892 F.3d 1249, 1253 (D.C. Cir. 2018). The Fishermen satisfy the standing requirements for each.

## A.   Direct Organizational Standing

The Fishermen have standing to intervene in this case. "An organization has standing on its own behalf if it meets the same standing test that applies to individuals. The organization must show actual or threatened injury in fact that is fairly traceable to the alleged illegal action and likely to be redressed by a favorable court decision." *Spann v. Colonial Vill., Inc.*, 899 F.2d 24, 27 (D.C. Cir. 1990). Such an injury can be exhibited by "a direct conflict between the defendant's conduct and the organization's *mission* . . . ." *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1430 (D.C. Cir. 1996) (emphasis in original). The Fishermen satisfy organizational standing.

### 1.   Injury in fact

Regarding injury in fact, frustration of organizational efforts to represent member interests and "the consequent drain on the organization's resources," constitutes an injury sufficient for standing. *Havens Realty Corp. v. Coleman*, 455

U.S. 363, 379 (1982); *People for the Ethical Treatment of Animals ("PETA") v. U.S. Dep't of Agric.*, 797 F.3d 1087, 1093 (D.C. Cir. 2015) (finding that organizations must show "a concrete and demonstrable injury to [the organization's] activities," distinct from "a mere setback to [the organization's] abstract social interests" (citation omitted)). Conservation Law Foundation's lawsuit threatens to frustrate the Fishermen's efforts to protect member interests, and because the 2016 ban on commercial fishing within the monument caused actual injuries to each of the Fishermen's activities, by seeking the restoration of that prohibition, this lawsuit threatens to immediately reinstate those injuries. The organizational injury to the Fishermen resulting from this lawsuit and the Plaintiffs' requested relief, is threefold.

First, this lawsuit harms the Fishermen's interests in their 2017 challenge to the monument. Casoni Decl. ¶ 35; Mackey Decl. ¶ 25; Borden Decl. ¶ 38; Brady Decl. ¶ 29. That challenge is presently pending on a petition for writ of certiorari in the United States Supreme Court. *See* Petition for a Writ of Certiorari, *Mass. Lobstermen's Ass'n v. Ross*, No. 20-97. But the 2020 Proclamation arguably—although the Fishermen dispute this—moots the 2017 lawsuit. Therefore, the coincident timing of the 2020 Proclamation and this lawsuit threatens to moot the Fishermen's challenge to the 2016 Proclamation only to later void the limited relief provided by the 2020 Proclamation. At a minimum, the close relation between this case and the Fishermen's 2017 lawsuit means that the outcome of each will significantly affect the scope of relief available in the other. And it bears noting that each of the parties to

14

the present lawsuit, with the exception of Mr. Williams, are also parties to the Fishermen's 2017 challenge, although the alignment between those parties is different. Casoni Decl. ¶¶ 23, 25; Mackey Decl. ¶¶ 13, 15; Borden Decl. ¶¶ 25, 27; Brady Decl. ¶¶ 17, 19. The Fishermen's interests in their lawsuit will be harmed, a significant organizational injury, unless they are able to participate as parties in this lawsuit.

Second, restoring the monument's fishing prohibitions would also harm the Fishermen, by frustrating a five-year organizational effort to protect members' individual interests and resources. *Havens Realty Corp.*, 455 U.S. at 379. In the five years since the first proposal was made to designate the monument and ban commercial fishing within its boundaries, the Fishermen have expended significant time and organizational resources educating their members on the monument's implications, conducting research on the impacts of the monument, advocating for their members' interests by submitting public comments, and meeting with decision-makers. Casoni Decl. ¶¶ 8–14, 32–33; Mackey Decl. ¶¶ 8, 23; Borden Decl. ¶¶ 8–16, 35–36; Brady Decl. ¶¶ 7–11, 25–27. As such, the designation, and its ban on commercial fishing, has over the last five years constituted a significant "drain" on each Association, forcing them to expend additional organizational resources to carry out their missions and protect their members' interests. *Havens Realty Corp.*, 455 U.S. at 379. Restoring the commercial fishing prohibitions would harm the Fishermen by further frustrating this five-year long effort to protect member

15

interests and requiring the continued allocation of resources to such efforts. Casoni Decl. ¶ 35; Mackey Decl. ¶ 25; Borden Decl. ¶ 38; Brady Decl. ¶ 29.

For example, Beth Casoni, Executive Director of the Massachusetts Lobstermen's Association, upon learning of the proposed designation, worked to gather data and estimate the proposal's likely impact on the Association's members. Casoni Decl. ¶ 8. She also contributed to a 2015 letter to the President explaining the harm the proposal would inflict on the Association's members, and attended a 2016 meeting with representatives of the Council on Environmental Quality. *Id.* ¶¶ 9–13. Further, in the lead up to the 2020 Proclamation, the Massachusetts Lobstermen's Association submitted comments urging the withdrawal or modification of the monument. *Id.* ¶ 32. In June 2017, Ms. Casoni met with then-Secretary of the Interior Ryan Zinke to explain how the monument affected the Association's members and why it should be revoked or modified. *Id.* ¶ 33. These efforts would be frustrated and undermined, if the commercial fishing prohibition is restored within the monument, requiring the expenditure of additional organizational resources in furtherance of Massachusetts Lobstermen's Association's mission to protect its members' interests. *Id.* ¶ 35. Each of the other Fishermen have engaged in similar efforts since 2015, and would face similar injuries. Mackey Decl. ¶¶ 8, 23, 25; Borden Decl. ¶¶ 8–16, 35–36, 38; Brady Decl. ¶¶ 7–11, 25–27.

Third, the 2016 Proclamation's prohibition on commercial fishing within the monument undermined many of the Fishermen's sustainable fisheries initiatives, further frustrating efforts to protect the interests of the Northeast fishing industry.

Many of the Fishermen have expended resources and played key leadership roles in working with regulators to ensure that commercial fishing not have adverse environmental consequences. Casoni Decl. ¶¶ 5–6; Mackey Decl. ¶¶ 6–7; Borden Decl. ¶ 7. One indirect effect of the 2016 prohibition was that fishermen who previously fished within the monument area (whether the Fishermen's members or fishermen from other states) sought their catch elsewhere, resulting in increased competition and fishing within neighboring fisheries. Casoni Decl. ¶ 22; Borden Decl. ¶ 24; Brady Decl. ¶ 16. This increased competition undermined the Fishermen's sustainability initiatives, by increasing the potential for overfishing and conflict in neighboring fisheries. Should the commercial fishing prohibition be reinstated as the result of this lawsuit these initiatives in neighboring fisheries will again be frustrated.

For example, Atlantic Offshore Lobstermen's Association has for the past several years been involved in efforts to ensure that the endangered North Atlantic right whale is not harmed by commercial fishing activities. Given that conflict between North Atlantic right whales and fishing gear is more likely in the neighboring shallower water than the deeper areas contained within the monument, a prohibition on fishing within the monument increases harm to the whale. Borden Decl. ¶ 13. This in turn could require the Association to engage in additional efforts to ensure lobstering does not harm the species. *Id.* And Garden State Seafood Association has worked closely with the Mid-Atlantic Fishery Management Council to develop a rule to protect deep-sea coral in the region, while maintaining a productive fishery. Mackey Decl. ¶ 7.

17

As such, there exists "a direct conflict between" the Plaintiffs' conduct, in seeking the restoration of the fishing prohibitions, and the "*mission*" of the Fishermen. *Nat'l Treasury Emps. Union*, 101 F.3d at 1430. The Fishermen have sufficiently demonstrated an injury in fact.

### 2.   Causation and Redressability

Because the organizational applicants have suffered and would again suffer injuries enough to confer standing, they also meet the traceability and redressability prongs of the standing test. *See Crossroads Grassroots Policy Strategies*, 788 F.3d at 316 (holding in similar circumstances that if a proposed defendant-intervenor "can prove injury, then it can establish causation and redressability."). If this Court grants Plaintiffs' requested relief, then the injuries resulting from the original commercial fishing prohibition would be restored. The Fishermen can prevent these injuries by defeating Plaintiffs' challenge to the President's 2020 Proclamation. *See id.* Therefore, the organizational injuries are traceable to this lawsuit and redressable through a judgment in favor of Defendants. Accordingly, the organizational applicants have standing to intervene.

### B.   Associational Standing

The Fishermen also have standing to intervene on behalf of their members. An organization has standing to bring suit on behalf of its members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in

18

the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *Humane Soc'y of the U.S. v. Hodel*, 840 F.2d 45, 53 (D.C. Cir. 1988).

### 1.   The Fishermen's members have standing to sue in their own right

The Fishermen's members would suffer substantial injuries should Plaintiffs be granted their requested relief.

As an initial matter, it is worth noting that as the "objects" of the 2016 Proclamation's prohibition on commercial fishing within the monument, there is "little question," the Fishermen's members have standing to intervene to defend against the reinstatement of that prohibition. *Cf. Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561–62 (1992) (explaining that "there is ordinarily little question" of standing for the object of a regulation). More specifically, the prohibition on commercial fishing within the monument locked many of the Fishermen's members out of an important fishery, reduced the value of members' businesses, disrupted members' fishing activities in surrounding fisheries, and had a substantially negative effect on members operating within local economies dependent upon the fishery. Casoni Decl. ¶¶ 17–22; Mackey Decl. ¶¶ 4, 11–12; Borden Decl. ¶¶ 19–24; Brady Decl. ¶¶ 13–16.

For example, as a result of the seven-year phaseout on lobster fishing within the area designated, some members of Massachusetts Lobstermen's Association lost up to 40% of the values of their businesses, due to perceptions about limitations on their permits and future ability to fish in the area. Casoni Decl. ¶ 20. Members of Garden State Seafood Association, who operate approximately ten vessels

participating in the Pelagic Trawl fisheries, were immediately excluded from the monument area and lost revenue as a result. Mackey Decl. ¶ 12. Long Island Commercial Fishing Association members who fish for fluke, whiting, squid, swordfish, and tuna, lost out on income as a result of being immediately shut out of the monument, which is a highly important area for these targets. Brady Decl. ¶¶ 6, 15. These include Mark Stephen Phillips, who has fished in the area since 1980 and as a result of the 2016 Proclamation was immediately excluded from an abundant fishery he otherwise would have fished. Phillips Decl. ¶¶ 7–9. And members of Atlantic Offshore Lobstermen's Association who fish outside the monument reported immediate harm due to increased gear conflict with the mobile gear fleet that was excluded from the monument and thus started prosecuting their fishing elsewhere. Borden Decl. ¶ 24.

The 2020 Proclamation, by contrast, removed the prohibition on commercial fishing within the monument, and at least for now, has alleviated many of these injuries. Casoni Decl. ¶ 30; Mackey Decl. ¶ 20; Borden Decl. ¶ 32; Brady Decl. ¶ 24. Indeed, some members of the Long Island Commercial Fishing Association have already resumed fishing within the monument. Brady Decl. ¶ 24. And others, such as Mark Stephen Phillips, intend to return to the area this winter. Phillips Decl. ¶ 11. By granting the Plaintiffs' requested relief in this lawsuit and restoring the 2016 prohibition on commercial fishing within the monument, this Court would reinitiate the Fishermen's members' injuries anew. Casoni Decl. ¶ 34; Mackey Decl. ¶ 24; Borden Decl. ¶ 37; Brady Decl. ¶ 28. The Fishermen's individual members will

therefore suffer injury in fact as a result of Plaintiffs' requested relief. These economic injuries are sufficient to confer individual standing on the Fishermen's members. *See Nat'l Wildlife Fed'n v. Hodel*, 839 F.2d 694, 704 (D.C. Cir. 1988) ("Injury to . . . traditional economic interests, will support a claim of standing."); *N.C. Fisheries Ass'n, Inc. v. Gutierrez*, 518 F. Supp. 2d 62, 82 (D.D.C. 2007) ("Economic harm . . . is a canonical example of injury in fact sufficient to establish standing.").

Likewise, these injuries are traceable to this lawsuit and would be redressed through a judgment in favor of Defendants, which would permit the continued resumption of fishing in the affected area. *Crossroads Grassroots Policy Strategies*, 788 F.3d at 316. Accordingly, the Fishermen would otherwise have standing to sue in their own right.

> **2.     The interests to be protected are germane to the Fishermen's purposes and individual participation is unnecessary**

The interests the Fishermen seek to protect through this litigation are germane to their purposes. *Cf. Hunt*, 432 U.S. 333. As described above each of the Fishermen's missions include sustaining and enhancing fisheries; ensuring the economic vitality of the commercial fishing industry; and advocating for the interests of their members and the fishing industry before state legislatures, federal and state agencies, and in litigation. Casoni Decl. ¶¶ 4–5; Mackey Decl. ¶¶ 4–6; Borden Decl. ¶¶ 4, 7; Brady Decl. ¶ 4. Therefore, participation in this litigation in order to defend the ability to commercially fish within the monument and protect neighboring fisheries is undoubtedly germane to each of the Fishermen's goals.

Finally, the participation of individual members in the lawsuit is not necessary. The Fishermen seek to intervene to defend against the Plaintiffs' challenge, and merely ask this Court to deny the Plaintiffs' requested relief. *Cf. Am. Ass'n of Retired Persons v. U.S. Equal Emp't Opportunity Comm'n*, 226 F. Supp. 3d 7, 20 (D.D.C. 2016) (finding that participation of individual members was not required where only injunctive relief was sought). Accordingly, the Fishermen have standing to intervene on behalf of their members.

## II.     The Fishermen Satisfy Rule 24(a) and Should Be Granted Intervention as of Right

This Court takes "a liberal approach to intervention." *Wilderness Soc'y v. Babbitt*, 104 F. Supp. 2d 10, 18 (D.D.C. 2000). As such, an applicant with standing may intervene as of right under Rule 24(a)(2) when: (1) the application is timely; (2) the applicant claims an interest relating to the property or transaction that is the subject of the action; (3) the applicant's interest, may as a practical matter be impaired or impeded; and (4) the applicant's interest is not adequately represented by existing parties. *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003) (citations omitted); Fed. R. Civ. P. 24(a)(2). The Fishermen satisfy each requirement for intervention as of right.

### A.     The Fishermen's Motion to Intervene Is Timely

The timeliness of a motion to intervene

is to be judged in consideration of all the circumstances, especially weighing the factors of time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a

means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case.

*United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1295 (D.C. Cir. 1980).

The Fishermen's application is timely as they have moved to intervene at an early stage of this litigation. Conservation Law Foundation's complaint was filed on June 17, 2020, and the Fishermen are filing this motion to intervene just over three months later. *See* ECF No. 1. This Court has not yet ruled on any substantive matters and on September 11, 2020, stayed the case pending the Supreme Court's action on the Fishermen's petition for writ of certiorari. *See* Minute Order, Sept. 11, 2020.

Further, the Fishermen are committed to participating on the same schedule as the existing parties, once the stay is lifted, and have submitted a proposed motion to dismiss and supporting memorandum (attached to this motion). As such, the Fishermen's motion to intervene will not prejudice any of the parties, nor will it result in significant disruption or delay. This is especially true in light of the Court's September 11 stay order. This motion to intervene is therefore timely. *Cf. Cty. of San Miguel v. MacDonald*, 244 F.R.D. 36, 38, 46 (D.D.C. 2007) (granting motion to intervene filed more than 90 days after the complaint); *Navistar, Inc. v. Jackson*, 840 F. Supp. 2d 357, 361 (D.D.C. 2012) (finding timely a motion to intervene filed "less than two weeks after Defendants filed their responsive pleadings, and before any discovery or substantive progress had been made in the case").

## B.   The Fishermen Have Significantly Protectable Interests in This Action

To intervene as of right, a party must have an "interest relating to the property or transaction that is the subject of the action." Fed. R. Civ. P. 24(a)(2). The interest

test is "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967). Furthermore, demonstrating "constitutional standing is alone sufficient to establish that [an applicant for intervention] has 'an interest relating to the property or transaction which is the subject of the action.'" *Fund for Animals, Inc.*, 322 F.3d at 735 (quoting Fed. R. Civ. P. 24(a)(2)); *see also Jones v. Prince George's Cty.*, 348 F.3d 1014, 1018–19 (D.C. Cir. 2003)).

The Fishermen have established standing to intervene in this case. *See supra* 12–22. The Fishermen and their individual members have significant interests at stake because the Plaintiffs' request would significantly affect access to offshore fisheries in the North Atlantic Ocean, resulting in significant economic harm to the Fishermen's members, and frustrating the Fishermen's efforts to protect their members' resources. *See id.* Accordingly, the Fishermen have a significant interest in this litigation.

### C.   Disposition of This Case in Plaintiffs' Favor Will Impair or Impede the Fishermen's Interests

Disposition of this case plainly threatens to impair and impede the Fishermen's interests. The threshold for demonstrating potential impairment of interests is low, as Rule 24(a)'s requirement addresses whether, as a practical matter, denial of intervention would impede a prospective intervenor's ability to protect its interests. *See Fund for Animals, Inc.*, 322 F.3d at 735 (looking to the "practical consequences" of denying intervention and determining that the impairment

24

requirement is a flexible standard). This standard can be met even when there is merely a "possibility" that an applicant's ability to protect its interests could be impaired or impeded by the legal consequences of the suit. *Foster v. Gueory*, 655 F.2d 1319, 1325 (D.C. Cir. 1981).

If the Plaintiffs' requested relief is granted, it is a *certainty* that many of the Fishermen's members will again be prohibited from fishing the area now designated as the monument, others will face increased competition and the ill effects of overfishing in neighboring fisheries, and still others will suffer economic consequences from disruptions to the regional fishing industry generally. Casoni Decl. ¶ 34; Mackey Decl. ¶ 24; Borden Decl. ¶ 37; Brady Decl. ¶ 28. Moreover, it is likely, given the related nature of the cases, that this case will affect the relief the Fishermen can obtain in their challenge to the 2016 Proclamation. Accordingly, the Fishermen satisfy the impairment requirement for intervention as of right.

### D.   None of the Existing Parties Adequately Represent the Fishermen's Interests

Inadequacy of representation is satisfied "if the applicant shows that representation of [its] interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (citation omitted). This requirement has been described as "not onerous," *Fund for Animals*, 322 F.3d at 735 (quoting *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986)), and an applicant "'ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation for the absentee.'" *Am. Tel. & Tel. Co.*, 642 F.2d at 1293 (quoting 7A

25

Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1909 (1st ed. 1972)). The Fishermen meet the "minimal" threshold for demonstrating that none of the existing parties will adequately represent their interests.

The Federal Defendants will not adequately represent the Fishermen's interests, for three closely related reasons.

First, the Federal Government is motivated by broad public interests and, as a result, is incapable of representing the private interests of the Fishermen. The D.C. Circuit has "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals*, 322 F.3d at 736 & n.9 (collecting cases). This is due to the fact that a government entity would be "shirking its duty were it to advance th[e] narrower interest" of a potential intervenor "at the expense of its representation of the general public interest." *Id.* at 737 (quoting *Dimond*, 792 F.2d at 192–93). As such, intervention is favored in cases involving government entities, where an applicant's interest in intervention is "more narrow and focused," than that of the public at large. *See Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 912 (D.C. Cir. 1977).

The Fishermen and their members have direct, personal, and pecuniary interests in this matter that the general public lacks. They seek to defend the interests of the commercial fishing industry and to protect the ability of their members to fish commercially (whether that be within the area now designated as the monument, or in neighboring fisheries which experienced increased competition as a result of the commercial fishing prohibition). The Federal Defendants will not

give the same consideration to these interests as will the Fishermen, given the need to balance other political and policy concerns. *See Fund for Animals*, 322 F.3d at 737; 85 Fed. Reg. at 35,793–95 (identifying the "management of objects of historical and scientific interest," pursuant to the President's duties under the Antiquities Act as the objective for signing the 2020 Proclamation). This divergence between the Fishermen's members' "narrow and focused" economic interests in the North Atlantic fishery, and the Federal Defendants broad "public" concerns with the discharge of their duties under a federal statute, is alone sufficient to establish inadequacy of representation in the D.C. Circuit.

Second, the Fishermen anticipate that they will defend the 2020 Proclamation on different grounds than the Federal Defendants, rendering the Federal Defendants' representation of their interests especially inadequate, and ineffective. This is particularly significant given the clear divergence in interests between the Fishermen and the Federal Defendants. For example, the Federal Defendants are likely to defend the 2020 Proclamation on grounds that maximize presidential authority and discretion, as they have defended the 2016 Proclamation in the Fishermen's 2017 lawsuit. ECF No. 12 at 35–42. The Fishermen, by contrast, will raise arguments that limit presidential power and discretion. *See* Memorandum in Support of Massachusetts Lobstermen's Association, et al.'s [Proposed] Motion to Dismiss at 15–27. The Federal Defendants consider the 2020 Proclamation to be lawful because it falls within the President's broad discretion to regulate monuments like the Northeast Canyons and Seamounts Marine National Monument, whereas

the Fishermen also argue the 2020 Proclamation is legally compelled because the 2016 Proclamation and its commercial fishing prohibitions were illegal. *Compare* ECF No. 12 at 35–42 *with* Memorandum in Support of Massachusetts Lobstermen's Association, et al.'s [Proposed] Motion to Dismiss at 15–27.

Third, at a more fundamental level, and compounding the above, the Federal Defendants' institutional interests in asserting strong Federal control over national monuments and maintaining broad Presidential authority under the Antiquities Act do not align with the Fishermen's interests in maintaining their ability to fish in the North Atlantic Ocean. The resultant incapacity to represent the Fishermen's interests, is perhaps most clearly exhibited by the fact that the Fishermen and the Federal Defendants are presently adverse parties in the Fishermen's 2017 lawsuit over the scope of the President's authority to designate the very monument at issue in this case. *See* Petition for a Writ of Certiorari, *Mass. Lobstermen's Ass'n v. Ross*, No. 20-97.

This makes the differing focus of the arguments now offered by the Fishermen and the Federal Defendants particularly significant. *Compare* ECF No. 12 at 35–42 *with* Memorandum in Support of Massachusetts Lobstermen's Association, et al.'s [Proposed] Motion to Dismiss at 15–27. The Federal Defendants now argue in the present challenge for an interpretation of the Antiquities Act that upholds that original designation, even if in modified form. *See* ECF No. 12 at 35–42. The present case and the Fishermen's 2017 challenge are therefore closely related, and the present case could significantly affect any relief the Fishermen might obtain on

remand in their separate challenge to the monument. Thus, although the Fishermen and the Federal Defendants are superficially aligned in this matter, the adversity between their interests and positions is clear. *Cf. Fund for Animals*, 322 F.3d at 736 (finding intervention appropriate where the interests of a governmental party and a superficially aligned prospective intervenor "might diverge during the course of litigation").

The Fishermen's interests are likewise not adequately represented by defendant-intervenor Jonathan Williams, who was granted party status on September 10, 2020. Mr. Williams' interests differ in important ways from those of the Fishermen. Mr. Williams, for instance, lacks the Fishermen's interest in protecting the relief available in their 2017 lawsuit. *See* ECF No. 11-1 at 11–14 (outlining Mr. Williams' distinct intervention interests). Moreover, as their proposed motions to dismiss show, the Fishermen would raise different arguments from those of Mr. Williams. *Compare* Memorandum in Support of Massachusetts Lobstermen's Association, et al.'s [Proposed] Motion to Dismiss at 15–27 *with* ECF No. 11-5 at 13–14. Like the Federal Defendants, Mr. Williams considers the 2020 Proclamation to be lawful because it falls within the President's broad discretion to regulate national monuments. *See* ECF No. 11-5 at 13–14. This is in contrast to the Fishermen's position that the 2020 Proclamation is legally compelled. *See* Memorandum in Support of Massachusetts Lobstermen's Association, et al.'s [Proposed] Motion to Dismiss at 15–27. And as outlined above, these differing arguments are more than a matter of mere litigation strategy. They go to the heart of the Fishermen's interests

in intervention: their position that the monument is itself illegal. *See id.* Finally, the Fishermen are a broad coalition of regional trade associations, representing the interests of individuals and businesses operating across numerous industries, including fishermen who were prohibited from fishing the monument area prior to the 2020 Proclamation. Casoni Decl. ¶¶ 4, 17–22; Mackey Decl. ¶¶ 4, 11–12; Borden Decl. ¶¶ 4, 19–24; Brady Decl. ¶¶ 4–6, 8, 13–16. Mr. Williams sought intervention to protect his individual interest in the North Atlantic red crab fishery, of which he is presently the only licensed participant, and which the 2016 Proclamation provided for a seven-year phaseout rather than an immediate closure. ECF No. 11-1 at 6–7. As such, given the distinct interests that the Fishermen and Mr. Williams each represent, Mr. Williams likewise does not adequately represent the Fishermen's interests.

For these reasons, the existing parties' representation of the Fishermen's interests "may" be inadequate, and the Fishermen are entitled to intervene as of right.

## III.   In the Alternative, the Fishermen Satisfy the Standard for Permissive Intervention

If the Court denies the Fishermen's motion to intervene as of right, it should alternatively grant them permission to intervene pursuant to Rule 24(b). District courts have broad discretion to grant intervention under the permissive intervention standard. *U.S. Equal Emp't Opportunity Comm'n v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998) ("As its name would suggest, permissive intervention is an inherently discretionary enterprise.").

This Court may permit anyone to intervene who (1) demonstrates an independent ground for subject matter jurisdiction; (2) makes a timely motion to intervene; and (3) presents a claim or defense that has a question of law or fact in common with the main action. *Id.* (citing *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992)). The Fishermen meet each of these requirements.

First, as demonstrated above, the Fishermen have clearly demonstrated standing to intervene as defendants in this matter, *see supra* 12–22, and they would raise a number of defenses under a federal statute—the Antiquities Act, 54 U.S.C. § 320301. They have therefore demonstrated an independent basis for subject matter jurisdiction in this Court.

Second, the D.C. Circuit has "eschewed strict readings of the phrase 'claim or defense,'" and instead has adopted "a flexible reading of Rule 24(b)." *Nat'l Children's Ctr.*, 146 F.3d at 1046. In this case, the Fishermen seek to intervene to defend the legality of the 2020 Proclamation. This defense has questions of law in common with Plaintiffs' claims. If Plaintiffs' argument is correct, the 2020 Proclamation is either unconstitutional or unlawful under the Antiquities Act, and the 2016 Proclamation would control. If the Fishermen are correct, however, the 2020 Proclamation was within the President's discretion and was even legally compelled to cure the 2016 Proclamation's violation of the Antiquities Act.

Third, by filing this motion three months after Conservation Law Foundation's complaint, one month of the Federal Defendants' first responsive pleading, and within three weeks of this Court's entry of a stay, the Fishermen have

sought intervention sufficiently early to avoid undue prejudice to the parties. *See* ECF Nos. 1 & 12. As such, their motion is clearly timely. Fed. R. Civ. P. 24(b)(3).

Therefore, were the Court to conclude that the Fishermen lack a right to intervene, it should allow intervention permissively under Rule 24(b).

## CONCLUSION

The practical effect of a ruling in Plaintiffs' favor would severely affect the Applicant Fishermen's organizational interests and the interests of their members. Consequently, the Fishermen should be permitted to intervene in this case to defend theirs and their members' interests.

DATED: October 5, 2020.

Respectfully submitted:

DAMIEN M. SCHIFF
(D.D.C. No. CA00045)
Email: dschiff@pacificlegal.org
JEFFREY W. McCOY
(Cal. Bar No. 317377)
Email: jmccoy@pacificlegal.org
Pacific Legal Foundation
930 G Street
Sacramento, California 95814
Telephone: (916) 419-7111

s/ Jonathan Wood
JONATHAN WOOD (D.C. Bar No. 1045015)
Email: jwood@pacificlegal.org
*Counsel of Record*
TODD GAZIANO (Tex. Bar No. 07742200)
Email: tgaziano@pacificlegal.org
Pacific Legal Foundation
3100 Clarendon Blvd., Suite 610
Arlington, Virginia 22201
Telephone: (202) 888-6881

*Attorneys for Proposed Intervenors*